UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN DAVID PAYNE,

        Petitioner,

    vs.

ERIC ARNOLD,

        Respondent.

No.  2:14-cv-2394-JAM-EFB P

FINDINGS AND RECOMMENDATIONS

      Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on August 14, 2009, in the San Joaquin County Superior Court on charges of first degree murder, shooting at an occupied motor vehicle, making criminal threats, misdemeanor vandalism, and inflicting corporal injury on a spouse.  He seeks federal habeas relief on the following grounds: (1) his trial counsel rendered ineffective assistance; (2) jury instruction error violated his right to due process; and (3) the trial court violated his Sixth Amendment rights when it denied his motions for substitute counsel.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

/////

/////

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant Brian David Payne of first degree murder, shooting at an occupied motor vehicle, criminal threats, misdemeanor vandalism, and inflicting corporal injury on a spouse. The trial court sentenced defendant to 25 years to life in prison, with an additional term of 25 years to life for a firearms-use enhancement, and various concurrent terms.
>
> Among other things, issues arose during trial regarding defendant's competence to assist counsel in a rational manner and his requests to relieve his appointed trial counsel.
>
> Defendant now contends:
>
> 1. The trial court erroneously instructed the jury on the requisite mental state for heat of passion, and the prosecutor committed misconduct by misstating the law on heat of passion.  If either of those arguments are deemed forfeited, defendant claims defense counsel rendered ineffective assistance by failing to object at trial to those errors.
>
> 2. The trial court abused its discretion by not providing a clarifying instruction on provocation sufficient to reduce first degree murder to second degree murder, after the jury foreperson indicated that a holdout juror did not understand the concept.
>
> 3. Defense counsel was ineffective in failing to prevent disclosure at the competency trial of privileged information, the trial court abused its discretion in considering inadmissible hearsay, and the cumulative effect of the errors requires reversal of the competency determination and the sanity verdict.
>
> 4. The trial court prejudicially erred in denying his motions to discharge his trial counsel.
>
> We conclude:
>
> 1. The jury was properly instructed on heat of passion, and defendant forfeited his claim of prosecutorial misconduct. Defendant's ineffective assistance claim fails because he has not established prejudice.
>
> 2. Defendant forfeited his claim that the trial court should have provided a clarifying instruction on provocation, because he acquiesced to the trial court's response to the jury inquiry.

3. The record does not support defendant's claim of attorney-client privilege, and defendant's ultimate claim of ineffective assistance fails because he has not established prejudice.

4. The trial court acted within its discretion in denying defendant's motions to substitute his appointed trial counsel.

We will affirm the judgment.

**BACKGROUND**

Defendant was married to the victim, Jamie Baker, and the couple had three children: Brian, Jr., Markus, and Aiden.  But the relationship between defendant and his wife began to deteriorate beginning in August 2006.  Defendant suspected Jamie was having an affair.  He heard a message from a man on Jamie's cell phone, and defendant claimed Jamie showed him responses she received from other men on a dating website she had visited, causing defendant to become angry and jealous.  Defendant accused Jamie of cheating on him and kicked her in the back when she refused to have sex with him on one occasion in December 2006.

Defendant told his coworker he would kill Jamie if she ever left him.  He said he put a gun on Jamie to scare her.  Jamie's friend, Hillary Hays, overheard defendant threaten to kill Jamie during a cell phone conversation in November 2006.  Defendant said he did not want Jamie to be with anyone else.

Defendant read subsequent texts on Jamie's cell phone and learned that three men had contacted her.  One text sent from Jamie's cell phone read, "I can't wait to rub on your rock-hard chest again." The texts on Jamie's cell phone confirmed defendant's suspicion that Jamie was unfaithful.  Defendant felt his marriage was a joke and Jamie was using him, but he still wanted to work things out.  In a fit of rage, defendant slashed Jamie's car tires and choked her on January 10, 2007.  Jamie summoned the police, moved out of the apartment she shared with defendant, and went to live with Hays.

Jamie reported to police that defendant constantly harassed her after she moved in with Hays.  He called Hays's home about 20 times inquiring about Jamie and showed up at Hays's apartment.  He said he would kill Jamie before he allowed her to be with someone else. On one occasion, he took the ignition wire out of Jamie's car to prevent her from leaving.

Jamie obtained an emergency protective order against defendant. She planned to take the children to Texas, but defendant convinced her to stop along the freeway so that he could say goodbye to the children.  However, defendant took Aiden out of Jamie's car and left, saying Jamie would never see Aiden again and that he would kill Jamie.  Jamie called the authorities.

Defendant left Aiden with Jamie's mother the next day, and Jamie took the children to Texas.  Jamie would not allow the children to tell defendant where they were, but she permitted defendant to talk

to Brian, Jr. and Markus on the telephone.  Jamie told Hays she wanted to get as far away from defendant as she could get.

After Jamie left with the children, defendant smoked cocaine constantly.  He stopped going to work.  He smoked between 7 to 10.5 grams of cocaine each day for seven days.  The cocaine made defendant depressed.  He was not sleeping and eating.  He began to hear Markus's voice calling him.  He believed Jamie or her boyfriend might kill him or set him up, so he kept his handgun by his bed for protection.  At some point in time, defendant wrote a note which said, "The enemy is Jamie Baker, bitch, mother fucker."

Defendant killed Jamie on January 28, 2007.  That morning, he met Jamie at a Panda Express restaurant near his apartment.  Jamie asked to meet to discuss things with defendant.  She wanted to meet at a public place because she was afraid of defendant.  Jamie left the children with defendant's sister in Texas.

Defendant stopped smoking cocaine about two hours before he had to meet Jamie.  He did not trust himself that day.

Defendant wanted to save his marriage and to go to counseling.  Jamie was adamant, however, that their relationship was over.  She told defendant the children were at his sister's house in Dallas.  Defendant told Jamie the children belonged with him, and Jamie responded that she would think about it.  Defendant felt Jamie held all the cards.  He and Jamie left the restaurant at 12:45 p.m.

Defendant returned to his apartment and smoked cocaine.  He felt low.  He thought "it's pretty much over.  Your wife's gone.  You don't know where your kids are.  You got $300 left in the bank.  Go draw 200 out, get on the freeway, turn your music on, and go get another quarter [of cocaine]."

After using an ATM machine, defendant departed from a parking lot in his car.  His gun was on the front seat of the car, and he knew the gun was loaded.  Defendant saw Jamie's car make a turn at an intersection.  She did not see him.  Defendant pulled his car next to Jamie's car and got out of his car with his gun.  He held his gun low. He wanted answers from Jamie about his children, and he wanted to scare Jamie.

Defendant repeatedly ordered Jamie to unlock her car doors.  She said no and began to move her car backwards.  Defendant hit his gun on the car window, and the gun discharged.  After that, he pointed the gun at Jamie and fired 15 shots.  Defendant was a good shot, and he knew the gun was empty when he finished shooting.  Twelve out of 15 bullets hit Jamie, killing her.

Defendant left in his car and went straight to his drug dealer's house.  He did not call 911.  Instead, he called Jamie's mother and others, confessing what he had done and claiming he was going to kill himself.

/////

4

Defendant drove to Walnut Grove to get high.  He turned off his cell phone.  He took off his white shirt to avoid detection.  He sat in a field thick with brush and smoked cocaine.  Law enforcement officers eventually found defendant in the field and took him into custody.  Defendant told detectives Jamie cheated on him and "she just kept doing it," "[j]ust kept going on and on, lying and lying.  She wouldn't stop.  Said she was afraid of [defendant], but still kept doing it."  He said Jamie wanted to leave and he agreed but he wanted her to leave the children with him and she took the children to hurt defendant.  He said Jamie told him at the Panda Express restaurant that she hated him and was "doing all this stuff on purpose."  Defendant said he shot Jamie because he was angry about all of the things she did to him and because she did not give a damn.

Additional background information is included in the discussion portion of this opinion where relevant to the contentions on appeal.

The jury convicted defendant of first degree murder (Pen.Code, § 187—count 1),[1] shooting at an occupied motor vehicle (§ 246 – count 2), criminal threats (§ 422 – count 3), misdemeanor vandalism (§ 594, subd. (a) – count 4) and inflicting corporal injury on a spouse (§ 273.5, subd. (a) – count 5).  The jury also found that in the commission of the offenses charged in counts 1 and 2, defendant intentionally and personally discharged a firearm causing great bodily injury to Jamie (§ 12022.53, subd. (d)).

The trial court sentenced defendant to a prison term of 25 years to life on count 1, with an additional term of 25 years to life pursuant to the firearms-use enhancement (§ 12022.53, subd. (d)), a concurrent three-year term on count 3, a concurrent one-year term on count 4, and a concurrent four-year term on count 5.  The trial court imposed and stayed a prison term for the conviction on count 2.

*People v. Payne*, No. C062753, 2014 WL 2090542, at *3 (Cal. Ct. App. May 19, 2014), *reh'g*

*denied* (June 16, 2014), *review denied* (Aug. 20, 2014).

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a

state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

---

[1]   Undesignated statutory references are to the Penal Code.

1    Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

2    corpus relief:

3       An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall not
4       be granted with respect to any claim that was adjudicated on the
        merits in State court proceedings unless the adjudication of the
5       claim -

6          (1) resulted in a decision that was contrary to, or involved
           an unreasonable application of, clearly established Federal law, as
7          determined by the Supreme Court of the United States; or

8          (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
9          State court proceeding.

10   For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

11   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

12   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

13   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

14   *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

15   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

16   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

17   precedent may not be "used to refine or sharpen a general principle of Supreme Court

18   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

19   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

20   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

21   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

22   be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of

23   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

24   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

25   A state court decision is "contrary to" clearly established federal law if it applies a rule

26   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

27   precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

28   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

6

1   writ if the state court identifies the correct governing legal principle from the Supreme Court's

2   decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v.*

3   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

4   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

5   court concludes in its independent judgment that the relevant state-court decision applied clearly

6   established federal law erroneously or incorrectly.  Rather, that application must also be

7   unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

8   (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

9   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

10  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

11  'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

12  *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

13  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

14  must show that the state court's ruling on the claim being presented in federal court was so

15  lacking in justification that there was an error well understood and comprehended in existing law

16  beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

17       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

19  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

20  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

21  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

22  de novo the constitutional issues raised.").

23       The court looks to the last reasoned state court decision as the basis for the state court

24  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

25  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26  _____

27       [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28  384 F.3d 628, 638 (9th Cir. 2004)).

1   previous state court decision, this court may consider both decisions to ascertain the reasoning of

2   the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

3   a federal claim has been presented to a state court and the state court has denied relief, it may be

4   presumed that the state court adjudicated the claim on the merits in the absence of any indication

5   or state-law procedural principles to the contrary."  *Richter*, 562 U.S. at 99.  This presumption

6   may be overcome by a showing "there is reason to think some other explanation for the state

7   court's decision is more likely."  *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

8   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

9   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

10  the federal claim was adjudicated on the merits.  *Johnson v. Williams*, ___ U.S. ___, ___, 133

11  S.Ct. 1088, 1091 (2013).

12      Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to determine

14  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

15  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

16  review of the constitutional issue, but rather, the only method by which we can determine whether

17  a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19  reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

20      A summary denial is presumed to be a denial on the merits of the petitioner's claims.

21  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

22  just what the state court did when it issued a summary denial, the federal court must review the

23  state court record to determine whether there was any "reasonable basis for the state court to deny

24  relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

25  have supported, the state court's decision; and then it must ask whether it is possible fairminded

26  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

27  decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate

28  /////

1  that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d

2  925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

3      When it is clear, however, that a state court has not reached the merits of a petitioner's

4  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

5  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

6  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

7  **III.  Petitioner's Claims**

8      **A.  Ineffective Assistance of Counsel/Failure to Object to Closing Argument**

9      In his first ground for federal habeas relief, petitioner claims that his trial counsel rendered

10  ineffective assistance in failing to object to the prosecutor's closing argument, in which he

11  articulated an erroneous standard for how to determine whether provocation was sufficient to

12  reduce murder to manslaughter.  ECF No. 1 at 5, 67.[3]  On appeal, petitioner claimed that: (1) the

13  trial court erroneously instructed the jury on the requisite mental state for heat of passion

14  (provocation); (2) the prosecutor committed misconduct by misstating the law on heat of passion;

15  and (3) his defense counsel rendered ineffective assistance by failing to object to the erroneous

16  jury instruction and the prosecutor's error.  ECF No. 15-1 at 7.  The California Court of Appeal

17  determined that: (1) the jury instruction on the requisite mental state for heat of passion was not

18  erroneous; (2) the prosecutor misstated the law during his closing argument but petitioner

19  forfeited a claim of prosecutorial misconduct by failing to object at trial and failing to request a

20  jury admonition; and (3) trial counsel's failure to object to the prosecutor's argument was

21  harmless.  The appellate court reasoned as follows:

> Defendant contends (A) the trial court erroneously instructed the
> jury on the requisite mental state for heat of passion, (B) the
> prosecutor committed misconduct by misstating the law on heat of
> passion, and (C) if either of those arguments are deemed forfeited,
> defendant claims defense counsel rendered ineffective assistance by
> failing to object at trial to those errors.
>
> A

---

[3]  Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

We begin with defendant's argument that the trial court erroneously instructed the jury on the requisite mental state for heat of passion. Defendant admitted killing Jamie, but claimed he acted out of a heat of passion.  He asked the trial court to instruct the jury on voluntary manslaughter based on heat of passion pursuant to CALCRIM No. 570.

The trial court instructed the jury pursuant to former CALCRIM No. 570, which at the time included the following sentence: "In deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts."[4]  Defendant argues that sentence misstated the law.  He says the trial court's instruction erroneously allowed the jury to base its decision on whether the provocation would have caused an average person to do what defendant did, i.e., commit a homicide.

Defendant's contention lacks merit.  The California Supreme Court has approved the challenged language.  (*People v. Beltran* (2013) 56 Cal.4th 935, 954 (*Beltran*).)  "Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter.  Heat of passion arises if, "'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."'  [Citation.]" (*Id.* at p. 942, fn. omitted; *see also* § 192, subd. (a).)  Whether the provocation suffices to constitute heat of passion focuses on the defendant's state of mind, not his particular act.  (*Beltran, supra*, 56 Cal.4th at p. 949.)  "[P]rovocation is not evaluated by whether the average person would act in a certain way: to kill.  Instead, the question is whether the average person would react in a certain way: with his reason and judgment obscured." (*Ibid.*, italics omitted.)

The California Supreme Court examined the former version of CALCRIM No. 570 challenged here and held the instruction was not ambiguous and did not improperly allow jurors to consider whether the provocation would cause an average person to do what the defendant did.  (*Beltran, supra*, 56 Cal.4th at p. 954.)  Instead, the instruction properly drew the jury's attention to the effect the provocation would have on the state of mind of an ordinarily reasonable person.  (*Ibid.*)  Following *Beltran*, we reject defendant's claim of instructional error.

Accordingly, it is not necessary for us to discuss defendant's due

---

[4]   CALCRIM No. 570 was amended after defendant's trial.  The amended instruction replaced the sentence "[i]n deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts" with the following: "In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment." (CALCRIM No. 570 (December 2008 supp.).)

10

process, Sixth Amendment, *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435], and prejudicial error claims because we conclude the CALCRIM No. 570 instruction given to the jury was not erroneous.

B

Defendant next claims the prosecutor committed misconduct by misstating the law on heat of passion.   The prosecutor argued: "You must decide whether the defendant was provoked and whether the provocation was sufficient.   In deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked and how such a person would act.   [¶]   That means, would a reasonable person have put 14 holes in his wife?   No, not if they have that history of abuse.   But a murderer would."[5]

We agree the prosecutor misstated the law when he suggested that in deciding whether the provocation was sufficient, the jury should consider whether a person of average disposition would have put 14 holes in his wife.   (*Beltran, supra*, 56 Cal.4th at pp. 949, 954.) However, defendant forfeited his claim of prosecutorial misconduct by failing to object at trial and failing to request a jury admonition. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)   Defendant does not contend that an objection or a request for admonition would have been futile.   (*People v. Najera* (2006) 138 Cal.App.4th 212, 224 [a defendant is excused from objecting and requesting an admonition if either would have been futile].)

C

Anticipating that his claim may be forfeited, defendant asserts ineffective assistance of counsel based on his trial counsel's failure to object to the prosecutor's statement about the requisite mental state for finding heat of passion.

A defendant claiming ineffective assistance of counsel must affirmatively establish each element of a dual-pronged test: (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient representation prejudiced defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693] (*Strickland*).)   If a defendant fails to establish either prong, the judgment must be upheld.   (*Strickland, supra*, 466 U.S. at p. 687 [80 L.Ed.2d at p. 693].)   We "'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"

---

[5]   Defendant fired 15 shots.   Twelve bullets hit Jamie.   Two of the bullets left in-and-out wounds, resulting in 14 holes.

11

(*In re Cox* (2003) 30 Cal.4th 974, 1019–1020; *Strickland, supra*, at p. 697 [80 L.Ed.2d at p. 699].)

With regard to the second prong, defendant must affirmatively demonstrate a reasonable probability that, but for counsel's unprofessional errors, the defendant would have obtained a more favorable result.  (*Maury, supra*, 30 Cal.4th at p. 389; *People v. Ledesma* (1987) 43 Cal.3d 171, 217–218; *Strickland, supra*, 466 U.S. at pp. 693–694 [80 L.Ed.2d at pp. 697–698].)  A reasonable probability is a probability sufficient to undermine confidence in the conviction.  (*Maury, supra*, 30 Cal.4th at p. 389.)  It is not enough for defendant to show that errors had some conceivable effect on the outcome of the case.  (*People v. Ledesma, supra*, 43 Cal.3d at p. 217.)

Defendant fails to establish prejudice because it is not reasonably probable that the jury disregarded the trial court's instructions and instead applied the prosecutor's argument concerning heat of passion.  The jury asked the trial court for clarification concerning the CALCRIM No. 570 instruction.  In particular, the jury asked: "If we all agree a person of average disposition would 'not' have acted in the same manner does that mean this crime is not heat of passion."  The trial court responded by referring the jury back to the elements stated in the CALCRIM No. 570 instruction.  As we explained, *ante*, the CALCRIM No. 570 instruction correctly stated the law on the requisite state of mind for heat of passion.  (*People v. Beltran, supra*, 56 Cal.4th at pp. 954–956 [finding no prejudice arising from any ambiguity created by counsel's closing statements where the jury requested clarification of the standard from the trial court and the trial court correctly explained the requisite mental state].)  The trial court also directed the jury to follow the law as the trial court explained it.  Absent contrary indication, we presume the jury followed those instructions.  (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)

Moreover, compelling evidence supports the finding that defendant intended to kill Jamie or deliberately acted with conscious disregard for Jamie's life and the killing was done willfully, deliberately and with premeditation.  Defendant threatened to kill Jamie on multiple occasions before he shot her.  He also admitted that he had thought about killing Jamie.  He candidly testified that he did not trust himself on the day of the shooting.  Defendant's belongings were packed in a suitcase and a gun holster was left on top of the suitcase on the day of the shooting, suggesting preparatory action by defendant.

Even if Jamie's conduct provoked anger or jealousy in defendant, defendant had sufficient time to cool off.  (*People v. Hach* (2009) 176 Cal.App.4th 1450, 1458 ["'''the rule is that, if sufficient time has ela[p]sed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.'' [Citation.]'''].)  Jamie left with the children nine days before the shooting.  Defendant claimed he wanted answers from Jamie about the children, but defendant spoke with his children during the time they were with Jamie, and Jamie told defendant where the children were.

In addition, about 50 minutes elapsed between the time defendant's meeting with Jamie ended and the time of the shooting. (*People v. Dixon* (1961) 192 Cal.App.2d 88, 90–91 [the defendant did not act in the heat of passion where 30 to 40 minutes elapsed from the time of the dispute between the defendant and the victim to the time of the killing].)   Defendant returned to his apartment and later followed Jamie with his gun.  He parked his car near Jamie's car and held his gun low, hiding it from Jamie's view.  He pointed the gun at Jamie and shot at her 15 times, carrying out his prior threats to kill her.  Defendant also had the presence of mind to immediately flee after he shot Jamie and to take measures to avoid detection by the police.  Defendant's actions and the lapse of time between his meeting with Jamie and the shooting demonstrate that defendant acted with intent to kill or a conscious disregard for life and with deliberation and premeditation, rather than from a heat of passion.

Unlike *People v. Berry* (1976) 18 Cal.3d 509 (*Berry*), a case defendant analogizes to his, there is evidence contradicting defendant's claim of provocation.  Although defendant said Jamie continued to have sex with him after she moved out of their apartment, Hays's testimony and Jamie's conduct indicate Jamie was afraid of defendant and wanted nothing to do with him.  Hays said Jamie returned to the couple's apartment to take care of their son when defendant was at work, but Jamie lived with Hays until Jamie left for Texas.  Jamie told police she was afraid of defendant.  Jamie said she wanted to get as far away from defendant as she could.  And on the day of the shooting she refused to continue her relationship with defendant.  The jury was not required to accept defendant's claim that Jamie created a "push-pull relationship" which provoked him to act rashly from passion on the day of the shooting.

On this record, it is not reasonably probable that defendant suffered prejudice from defense counsel's failure to object to the prosecutor's misstatement.  We reject defendant's ineffective assistance claim.

*Payne*, 2014 WL 2090542, at *3-6.

After the Court of Appeal rejected his arguments, petitioner raised his claim of ineffective assistance of counsel in a petition for review filed in the California Supreme Court.  ECF No. 1 at 67-70.  He argued that his trial counsel's failure to object to the prosecutor's erroneous closing argument constituted deficient performance, that counsel's failure to object precluded the jury from effectively considering the "substantial evidence" supporting petitioner's defense of heat of passion, and that the trial court's response to the jury question about "heat of passion" did not clear up the jurors' confusion.  *Id.* at 70.  The Supreme Court summarily denied the petition for review.  *Id.* at 16.

/////

13

1      ### 1.  __Applicable Legal Standards__

2      The applicable legal standards for a claim of ineffective assistance of counsel are set forth

3   in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

4   must show that (1) his counsel's performance was deficient and that (2) the "deficient

5   performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or

6   her representation "fell below an objective standard of reasonableness" such that it was outside

7   "the range of competence demanded of attorneys in criminal cases."  *Id.* at 687–88 (internal

8   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

9   fair trial, a trial whose result is reliable.'"  *Richter*, 562 U.S. at 114 (quoting *Strickland*, 466 U.S.

10  at 687).

11     A reviewing court is required to make every effort "to eliminate the distorting effects of

12  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

13  conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 669; *see Richter*, 562

14  U.S. at 114.  Reviewing courts must also "indulge a strong presumption that counsel's conduct

15  falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

16  This presumption of reasonableness means that the court must "give the attorneys the benefit of

17  the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

18  may have had for proceeding as they did."  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)

19  (internal quotation marks and alterations omitted).

20     Prejudice is found where "there is a reasonable probability that, but for counsel's

21  unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

22  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

23  outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

24  *Richter*, 562 U.S. at 112.  A reviewing court "need not first determine whether counsel's

25  performance was deficient before examining the prejudice suffered by the defendant as a result of

26  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

27  lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

28  /////

## 2. **Analysis**

As set forth above, the California Court of Appeal determined that petitioner did not suffer prejudice from his trial counsel's failure to object to the prosecutor's closing remarks. That determination is not objectively unreasonable and should not be set aside.

As noted by the California Court of Appeal, petitioner's jury was twice instructed with CALCRIM No. 570, which correctly stated the law regarding the requisite state of mind for heat of passion. The jurors were also instructed to follow the law as the trial court explained it, and that the arguments of counsel were not evidence. The jury is presumed to have followed these instructions, as well as the trial court's admonitions. *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007).

The California Court of Appeal determined that any error in failing to object to the prosecutor's closing remarks was harmless in light of the overwhelming evidence that petitioner killed his wife deliberately and with premeditation. This court agrees. Petitioner admitted that he had thought about and threatened to kill his wife before he actually did so, and the evidence shows he had more than enough time to consider his actions and change his mind before firing the fatal shots. As stated by the California Court of Appeal, and confirmed by this court's review of the record, "compelling evidence supports the finding that defendant intended to kill Jamie or deliberately acted with conscious disregard to Jamie's life and the killing was done willfully, deliberately and with premeditation." ECF No. 15-1 at 11. The decision of the California Court of Appeal denying this claim of ineffective assistance of counsel is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, petitioner is not entitled to federal habeas relief.

### B. **Jury Instruction on Provocation**

In his second ground for relief, petitioner claims that the trial court violated his right to due process in failing to give a *sua sponte* jury instruction in response to several questions from
/////

15

the jury during deliberations, and that his trial counsel rendered ineffective assistance in failing to request an instruction.  ECF No. 1 at 71.  The background to this claim is as follows.

On the fourth day of deliberations, the trial court received a note from the jurors that read: "We have all agreed that the defendant has committed murder.  We are unable to agree on the degree of murder."  Reporter's Transcript on Appeal (RT) at 1697.  The note also stated: "11 to 1."  *Id.*  The trial judge summoned the jurors to the courtroom and asked whether there was anything the court could do to assist the deliberations, "such as further jury instructions or re-reading of testimony."  *Id.*  When the juror foreman indicated that some assistance would be helpful, the judge directed the jury to return to the jury room and submit their request for assistance in writing.  *Id.* at 1698.

Subsequently, the jury sent another note which stated: "A juror is saying that the facts are not objective.  A juror is being biased against the state."  Clerk's Transcript on Appeal (CT) at 388.  The judge summoned the jury foreperson to talk about this note.  RT at 1700.  The foreperson stated that, with respect to one of the jurors, "all of the State witnesses are given limited credibility, wherein the defense, the credibility is greater.  It's not an even scale."  *Id.* at 1701.  The foreperson also stated that very early in the deliberations this same juror requested that the foreperson "ask for a hung jury."  *Id.* at 1701-02.  Upon further questioning, the foreperson stated that the holdout juror did could not "come to a logical conclusion" and did not "have an open mind."  *Id.* at 1707.  Specifically, he explained that the juror "does not understand sufficient, direct and immediate provocation and how it applies to the degrees of murder."  *Id.*  The judge responded to this comment by asking whether "further instruction from the Court on that issue would be helpful?"  *Id.*  The foreperson responded:

> This juror asked in the beginning for the PowerPoint presentations from both the prosecution and the defense, because this juror felt that the visual impact would be more – more definitive, and that's why we sent in the first note.[6]

---

[6]  The first note from the jury asked: "Can we have the power point presentations of the closing arguments?  Both Prosecution and Defense."  CT at 382.  The trial court responded that "the arguments of counsel are not evidence, therefore the court will not be sending them in to you.  Please see jury instruction 222."  *Id.*

16

> Even though we all knew that that was not evidence, this juror wanted to see that as opposed to just the typewritten page of instructions.

*Id.* at 1707-08.  The foreperson also explained that the holdout juror said that the facts "are not objective;" for example, "fifteen shots fired was determined by this juror not to be an objective fact."  *Id.* at 1708-09.

After listening to the foreperson's comments, the trial judge summarized the gist of his complaints:

> What he said was that all 11 of them agreed to a certain set of facts and this other juror said they weren't objective and he gave the example of 15 shots.  And just because a juror relies on faulty logic as analysis does not constitute refusal to deliberate to the sense where they're showing a bias for removal for good cause.

> He said the juror did deliberate.  It just sounds to the Court that they just have a different view of the facts.  Whether it's logical or not to the other jurors is not the issue. It seems like there's a disagreement over what is logical.

*Id.* at 1709-10.  Subsequently, the trial judge announced to the parties, outside the presence of the jury, that he did not find good cause to excuse the holdout juror for refusing to deliberate or for improper bias.  *Id.* at 1712-13.  The judge subsequently summoned the jurors to the courtroom and re-read CALCRIM No. 3550, as follows:

> It is your duty to talk to one another and to deliberate in the jury room.  You should try to agree on a verdict if you can.  Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors.

> Do not hesitate to change your mind if you become convinced that you are wrong, but do not change your mind just because other jurors disagree with you.

> Keep an open mind and openly exchange your thoughts and ideas about this case.  Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion.

> Please treat one another courteously.
> Your role is to be an impartial judge of the facts and not to act as an advocate for one side or the other.

/////

/////

1    *Id.* at 1715-16.[7]  The court then sent the jury back for further deliberations.  *Id.* at 1716.  At no

2    point during this process did the jurors request additional instruction on any point of law.

3         Petitioner claims that the trial court's failure to "clarify a key feature of the point of law

4    upon which the jury's deliberations turned, i.e., the application of provocation to the degrees of

5    murder, denied [him] his constitutional and statutory rights to due process, a valid jury trial, and a

6    jury properly informed on the law applicable to the case."  ECF No. 1 at 72.  Petitioner also

7    argues that his trial counsel rendered ineffective assistance in failing to request an additional jury

8    instruction on this subject.  *Id.* at 7, 72.  Petitioner contends that the trial judge had a

9    constitutional duty to "clear up any instructional confusion" after the jury foreperson implied that

10   "deliberations had broken down on the issue of provocation."  *Id.* at 72, 73.  He argues that there

11   was "clear disagreement among the jurors on the applicable law of provocation."  *Id.* at 73.

12        Petitioner also claims that the trial court had a "mandatory duty" to resolve the jury's

13   confusion, especially after soliciting the foreperson's explanation of the jury notes.  He contends

14   that the trial court "should have explained to the jury that 'the existence of provocation which is

15   not 'adequate' to reduce the class of the offense [from murder to manslaughter] may nevertheless

16   raise a reasonable doubt that the defendant formed the intent to kill upon, and carried it out after,

17   deliberation and premeditation."  *Id.*  He argues that "a correct understanding of the law relating

18   provocation to the degrees of murder was essential to the proper resolution of the case at the time

19   the foreperson requested clarification and there is a reasonable probability that, had the jury been

20   properly informed, the outcome would have been different."  *Id.* at 74.[8]

21   _____

22        [7]  The record reflects that all counsel agreed that a re-reading of CALCRIM No. 3550
     was an "appropriate response" to the jury's concerns.  *Id.* at 1714.

23        [8]  Respondent argues that petitioner s due process and jury trial claims are procedurally
24   defaulted because his trial counsel failed to seek a clarifying jury instruction concerning the
     application of "provocation" to the appropriate degree of murder.  ECF No. 15 at 28.  As a
25   general rule, "[a] federal habeas court will not review a claim rejected by a state court 'if the
     decision of [the state] court rests on a state law ground that is independent of the federal question
26   and adequate to support the judgment."  *Walker v. Martin*, 562 U.S. 307, 314 (2011) (quoting
     *Beard v. Kindler*, 558 U.S. 53 (2009)).  However, a reviewing court need not invariably resolve
27   the question of procedural default prior to ruling on the merits of a claim.  *Lambrix v. Singletary*,
     520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002):
28   ("Procedural bar issues are not infrequently more complex than the merits issues presented by the
     appeal, so it may well make sense in some instances to proceed to the merits if the result will be

18

1    **1. State Court Decision**

2    The California Court of Appeal rejected these arguments, reasoning as follows:

3    Defendant also argues the trial court abused its discretion by not
     providing a clarifying instruction on provocation sufficient to
4    reduce first degree murder to second degree murder, after the jury
     foreperson indicated that a holdout juror did not understand the
5    concept.   Defendant claims the error violated his rights to due
     process and to a jury trial.

6

7    Defendant's contention fails because he agreed with the trial court's
     response to the jury inquiries.  Defense counsel did not request any
8    additional jury instruction.  Defendant's acquiescence in the trial
     court's response to the jury's questions forfeits a claim of error on
9    appeal as to that response.  (*People v. Harris* (2008) 43 Cal.4th
     1269, 1317–1318; *People v. Rogers* (2006) 39 Cal.4th 826, 877;
10   *People v. Marks* (2003) 31 Cal.4th 197, 237.)

11   In any event, there is no merit in defendant's contention that the
     trial court was obligated to further instruct the jury on provocation.
12   Section 1138 requires a trial court to provide a deliberating jury
     with information the jury desires on points of law.  (*People v.
13   Hodges* (2013) 213 Cal.App.4th 531, 539.)  We review a trial
     court's decision on whether to instruct a deliberating jury under the
14   deferential abuse of discretion standard.  (*People v. Waidla* (2000)
     22 Cal.4th 690, 745–746; *People v. Hodges, supra*, 213
15   Cal.App.4th at p. 539.)  Here, however, the record does not support
     defendant's claim that the jury requested clarification about
16   provocation as it relates to the degrees of murder.   After
     deliberating for three days, the jury unanimously agreed that
17   defendant committed murder, but the jurors could not agree on the
     degree of murder.   There was one holdout juror.   The jury
18   foreperson requested further assistance from the trial court with
     regard to the holdout juror's apparent bias against the prosecution
19   and illogical consideration of the evidence.  But the jury did not
     request further instruction concerning provocation or heat of
20   passion after the trial court reinstructed with CALCRIM No. 570.
     The trial court waited for the jury to provide further guidance about
21   what assistance it needed from the trial court, following hearings on
     possible juror bias and misconduct.  The jury, however, did not
22   request additional instruction.  We find no error in the trial court's
     analysis of the jury's notes and of the statements by the jurors who
23   were questioned.  (*People v. Haskett* (1990) 52 Cal.3d 210, 232
     [deferring to the trial court because it is in a better position than the

24   the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question
     of procedural default should ordinarily be considered first, a reviewing court need not do so
25   invariably, especially when the issue turns on difficult questions of state law).  Where deciding
     the merits of a claim proves to be less complicated and less time-consuming than adjudicating the
26   issue of procedural default, a court may exercise discretion in its management of the case to reject
     the claim on the merits and forgo an analysis of procedural default. *See Franklin*, 290 F.3d at
27   1232 (citing *Lambrix*, 520 U.S. at 525).  This court concludes that petitioner due process and jury
     trial claims can be resolved more easily by addressing them on the merits.  Accordingly, the court
28   will assume that the claims are not defaulted.

appellate court to interpret the tone and nuances of problems in the jury room].)

We also cannot agree with defendant's contention that the record shows the jury misunderstood the standard for finding provocation for purposes of considering whether defendant committed first or second degree murder.  Read in context, the jury's notes and the jury foreperson's statements indicated a concern about the holdout juror's bias against the prosecution and her consideration of the evidence, not her understanding of the law concerning provocation or heat of passion.  In other words, the majority of the jury was concerned the holdout juror was incorrectly applying the law, not that the holdout juror (or conversely the rest of the jurors) misunderstood the law.  The trial court did not abuse its discretion in not providing further instruction on provocation.

Defendant also claims his counsel's failure to request a clarifying instruction on provocation constituted ineffective assistance.  We reject the claim because there was a reasonable tactical reason for defense counsel's omission.  (*People v. Mattson* (1990) 50 Cal.3d 826, 876.)  The jury could not agree on a verdict on the murder count.  Defense counsel may have decided not to object or request further instruction because counsel wanted a mistrial on that count.

*Payne*, 2014 WL 2090542, at *6-7.

## 2. **Analysis**

This court agrees with the analysis of the California Court of Appeal on this claim.  A full reading of the trial transcript reflects that the jury was mainly concerned about the failure of the holdout juror to accept established facts and to give fair consideration to the testimony of the prosecution witnesses.  Although the foreperson did state that the holdout juror "does not understand sufficient, direct and immediate provocation and how it applies to the degrees of murder," this statement was made in the context of explaining to the court that the holdout juror was failing to fairly deliberate and to apply established facts to the law.  After a review of the relevant record, this court agrees that the jury mainly wanted assistance in dealing with "the holdout juror's apparent bias against the prosecution and illogical consideration of the evidence," and not further instruction on the law.

It is true that in a federal trial "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."  *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946).  Here, however, the jury foreperson did not express confusion about the law

20

1   regarding provocation or request further instruction on the law of provocation during his

2   exchange with the trial judge.  In this regard, the court notes that the jury did ask for further

3   instruction on provocation and heat of passion prior to the conversation related above, and the

4   trial judge responded by referring the jury to CALCRIM No. 570.  This appeared to clear up any

5   confusion in that area.

6         The trial court responded to the foreperson's remarks by rereading CALCRIM No. 3550.

7   Subsequently, the jurors reached a unanimous verdict without asking any further questions on the

8   subject of provocation or failure to deliberate.  Where the trial judge "respond[s] to the jury's

9   question by directing its attention to the precise paragraph of the constitutionally adequate

10  instruction that answers its inquiry," and the jury asks no followup question, a reviewing court

11  can presume "that the jury fully understood the judge's answer and appropriately applied the jury

12  instructions."  *Waddington v. Sarausad*, 555 U.S. 179, 196 (2009) (quoting *Weeks v. Angelone*,

13  528 U.S. 225, 234 (2000) ("A jury is presumed to understand a judge's answer to a question.")).

14  Under these circumstances, it was not objectively unreasonable for the state court to conclude that

15  petitioner's jury received the answers it needed to resolve its difficulties over the failure of the

16  holdout juror to deliberately fairly and with an open mind.  The fact that the jurors asked no

17  further questions and were able to reach a unanimous verdict indicates that they were satisfied

18  with the court's answer and that it cleared up their confusion.

19        Nor is petitioner entitled to federal habeas relief on his claim that his trial counsel

20  rendered ineffective assistance in failing to request further jury instructions on the law of

21  provocation as it applied to the various degrees of murder.  As noted by the California Court of

22  Appeal, after it became clear that the jurors had failed to reach a verdict on the murder count, trial

23  counsel had a tactical reason for declining to request further instruction which might have cleared

24  up the jurors' disagreement and led to a conviction on that count.  Reasonable tactical decisions,

25  including decisions with regard to the presentation of the case, are "virtually unchallengeable."

26  *Strickland*, 466 U.S. at 687-90.

27        Petitioner has also failed to establish prejudice with respect to this claim.  The jury was

28  fully instructed on the concept of "heat of passion" to reduce murder to manslaughter (CT at 430-

21

31), the concept of "provocation" to reduce murder from first-degree to second-degree or to manslaughter (*id.* at 429), and the specific intent needed for a finding of first-degree murder, *id.* at 427-28.  There is no reasonable probability that the result of the proceedings would have been different if trial counsel had requested further jury instructions on the same subjects, particularly when the jury foreperson declined an offer by the trial court to give further instruction on provocation.

For all of the foregoing reasons, petitioner is not entitled to relief on these claims of jury instruction error and ineffective assistance of counsel.

### C. Ineffective Assistance of Counsel/Failure to Object to Admission of Evidence

In his next ground for relief, petitioner claims that his trial counsel rendered ineffective assistance in failing to "object to the admission of evidence subject to the attorney-client privilege and the attorney work-product doctrine and failure to object to consideration of inadmissible hearsay at the competency trial."  ECF No. 1 at 75.

### 1. State Court Decision

The California Court of Appeal described the background to these claims, and its ruling thereon, as follows:

> Defendant claims (A) defense counsel was ineffective in failing to prevent disclosure of privileged information at the competency trial, (B) the trial court abused its discretion in considering inadmissible hearsay, and (C) the cumulative effect of the errors requires reversal of the competency determination and the sanity verdict.[9]

> Before addressing defendant's contentions, we provide additional background information.  Defendant entered pleas of not guilty and not guilty by reason of insanity and during his arraignment requested the appointment of "a doctor on the issue of insanity." The trial court appointed Dr. Christina Antoine to evaluate defendant on the issue of his sanity at the time of the shooting.  The trial court later appointed a second doctor, Dr. Gary Cavanaugh, pursuant to section 1027, at defendant's request.[10]  This was the

---

[9]  Defendant also claims the errors resulted in a denial of due process, but we do not consider that claim because he failed to provide supporting argument.  (*People v. Jones* (1998) 17 Cal.4th 279, 304.)

[10]  Section 1027 provides that when a defendant pleads not guilty by reason of insanity the trial court shall select and appoint at least two but no more than three psychiatrists or licensed

1 | second evaluation of defendant by Dr. Antoine and Dr. Cavanaugh, as they had previously evaluated defendant's competence to stand trial pursuant to section 1368.[11]

2 |

3 | Defendant subsequently moved to exclude Dr. Antoine and Dr. Cavanaugh's testimony at trial on the ground that any information the doctors obtained through their section 1368 competency appointments was inadmissible.   The trial court ruled that Dr. Antoine and Dr. Cavanaugh could not evaluate defendant on the issue of sanity because the doctors had previously evaluated defendant's competence to stand trial.   The trial court declared a mistrial as to the sanity phase of the trial, ordered that the sanity phase be tried before a new jury, and appointed Dr. Rogerson and Dr. Hamon to evaluate defendant on the issue of sanity under section 1026.

Before the sanity phase commenced, however, defendant had an outburst in the courtroom, accusing the trial judge, district attorney, and his defense counsel of conspiring against him, and asserting that a local developer bribed the trial judge and was manipulating the trial.   The trial court suspended the proceedings to determine whether defendant was competent to assist his counsel in a rational manner.   Defense counsel requested a competency trial.   The trial court appointed Dr. Robert Hart, Dr. John Chellsen, and Dr. Wendy Weiss to evaluate defendant's competency.   Dr. Hart opined defendant was competent in that he could rationally assist his counsel during trial.   But Dr. Chellsen and Dr. Weiss concluded that although defendant understood the nature of the criminal proceedings against him, he was not competent to assist his trial counsel in a rational manner.

The trial court conducted a competency trial.   Among other evidence, the trial court admitted evidence regarding the second evaluation of defendant by Dr. Antoine and Dr. Cavanaugh.   Following the competency trial, the trial court found defendant competent to assist his counsel, concluding that defendant was malingering.   The trial court noted that during the guilt phase trial lasting several weeks, defendant never exhibited delusions concerning the local developer, but spoke about the developer when

psychologists, who have a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders, to examine the defendant and investigate his or her mental status. (§ 1027, subd. (a).)  Any psychiatrist or psychologist appointed by the court may be called by either party to the action or by the court, and shall be subject to all legal objections as to competency and bias and as to qualifications as an expert. (§ 1027, subd. (e).)

[11]   Section 1368 describes the procedure for a determination whether a defendant is competent to stand trial where the judge doubts the defendant's mental competence during the pendency of an action and prior to judgment.  If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court must order that the question of the defendant's mental competence be determined in a hearing held pursuant to sections 1368.1 and 1369.  (§ 1368, subd. (b).)

the trial court was setting the sanity issue for trial. The trial court found the timing of defendant's outburst "quite convenient." It determined defendant could control his behavior and was feigning delusions.

The trial court's decision was based on Dr. Hart's report and testimony and the trial court's observation of the defendant during the competency hearing and all prior proceedings. But the trial court also relied on Dr. Antoine's testimony and the fact that defendant told a fellow inmate that he had a plan to plead insanity. The trial court was not persuaded by the testimony and reports from Dr. Weiss and Dr. Chellsen, saying that Dr. Weiss's testimony was inconsistent and unpersuasive, and Dr. Chellsen's diagnosis of schizophrenia was unsupported by defendant's mental health history and conduct and the opinions of the other doctors.

A

With that background in mind, we turn to defendant's claim that his trial counsel was ineffective in failing to prevent the admission, at the competency trial, of evidence relating to the second evaluation of defendant by Dr. Antoine and Dr. Cavanaugh. Defendant asserts the information obtained from those evaluations was protected from disclosure under the attorney-client privilege because the trial court appointed Dr. Antoine and Dr. Cavanaugh to evaluate defendant pursuant to Evidence Code section 1017.7. Defendant maintains he did not personally enter a plea of not guilty by reason of insanity during the arraignment; hence Dr. Antoine and Dr. Cavanaugh were not appointed to examine him pursuant to section 1027.

Contrary to defendant's assertion, the record shows that defendant entered a plea of not guilty by reason of insanity at his arraignment, and he confirmed that plea at subsequent hearings and motions. Dr. Antoine and Dr. Cavanaugh were appointed in August 2007 to evaluate defendant's sanity pursuant to section 1027. Information gained from those evaluations was not protected by the attorney-client privilege. (*People v. Lines, supra*, 13 Cal.3d at p. 515.) Defendant has not established that defense counsel was deficient.

In addition, defendant has not shown prejudice. Even without the challenged evidence, there was substantial evidence supporting the trial court's determination that defendant was competent to stand trial.

A person who is mentally incompetent cannot be tried. (§ 1367, subd. (a); *People v. Ary* (2011) 51 Cal.4th 510, 517 [the trial of a defendant who is mentally incompetent violates the due process clause of the federal Constitution].) A defendant is incompetent to stand trial if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner. (§ 1367, subd. (a); *People v. Young* (2005) 34 Cal.4th 1149, 1216.) A defendant is presumed mentally competent unless he or she proves incompetence by a preponderance of the evidence. (§ 1369, subd. (f); *People v. Marks, supra*, 31 Cal.4th at

p. 215.)  On appeal, we view the record in the light most favorable to the trier of fact's determination and uphold that determination if it is supported by substantial evidence, i.e., evidence that is reasonable, credible, and of solid value.[12]  (*People v. Marks, supra*, 31 Cal.4th at p. 215; People v. Marshall (1997) 15 Cal.4th 1, 31.)

Dr. Hart opined that defendant could rationally assist his counsel during trial.  Dr. Hart was the chief psychiatrist at the jail where defendant was housed.  Dr. Hart found defendant logical and goal oriented in his thinking.  He observed that during the competency hearing defendant made a "voluntary controlled request to leave [the courtroom,] that actually indicated that he was thinking and planning."

Dr. Hart opined that defendant was malingering or intentionally presenting false symptoms of a mental illness.  He said defendant provided what appeared to be intentionally false or inconsistent answers to interview questions.  He observed that defendant selected a "strategy" when responding to interview questions.  Defendant's mental health records at the jail did not show delusional thinking by defendant.  The trial judge who observed defendant during the guilt phase and competency trials also found that defendant's conduct showed that defendant was not suffering from true delusions.  Dr. Chellsen conceded it was possible defendant was fabricating delusions.   And although Dr. Weiss opined that defendant suffered from a delusional disorder, she could not rule out the possibility that defendant was malingering.

In Dr. Hart's view, the condition of a person who was truly delusional would worsen under stress, such as during cross-examination.  But the trial judge found defendant did not mention the local developer at all when defendant was cross-examined for two days.  Dr. Chellsen agreed it would be unusual for a delusional schizophrenic to not exhibit his delusions during cross-examination.

Further, Dr. Hart and Dr. Weiss disagreed with Dr. Chellsen's diagnosis of schizophrenia, the diagnosis that formed the basis for Dr. Chellsen's opinion that defendant was not competent to assist his counsel.  Dr. Hart testified that defendant's presentation of one fixed delusion is not consistent with a diagnosis of schizophrenia.

Viewing the record in the light most favorable to the trial court's findings, we conclude substantial evidence supported the trial court's determination that defendant did not suffer from a mental disorder that prevented him from assisting his counsel at trial in a rational manner, even if we do not consider Dr. Antoine and Dr.

---

[12]   We disagree with defendant's assessment that an error in admitting Dr. Antoine's testimony and report "infected the entire framework of the competency trial."  A structural error is a "'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself'" and is found in a very limited class of cases. (*Johnson v. United States* (1997) 520 U.S. 461, 468–469 [137 L.Ed.2d 718, 728].)  Defendant has not shown that the error alleged in this case - erroneous admission of privileged communications - fits within the limited class of cases that requires automatic reversal.  (*Ibid.*)

Cavanaugh's testimony and reports.  Given the substantial evidence of defendant's competence to stand trial, an objection by defense counsel to the admission of defendant's communications with Dr. Antoine and Dr. Cavanaugh and the reports by Dr. Antoine and Dr. Cavanaugh would not have resulted in a more favorable result for defendant at the competency trial.   Accordingly, we reject defendant's ineffective assistance of counsel claim.

To the extent defendant claims his trial counsel erred by failing to object to the appointment of Dr. Antoine and Dr. Cavanaugh in August 2007 to conduct a section 1026 sanity evaluation of defendant when the same doctors had previously evaluated defendant for competency under section 1368, there was no prejudice.  The trial court declared a mistrial and appointed two new doctors to examine defendant on the issue of sanity.

B

Defendant also claims the trial court abused its discretion in considering inadmissible hearsay: defendant's out-of-court statement to a fellow inmate that defendant "needed to launch and succeed in an insanity defense."

The hearsay statement was contained in a police report Dr. Hart reviewed in evaluating defendant's competence to stand trial.  The inmate who reported defendant's statement did not testify at the competency hearing, and neither did defendant or the officer who prepared the police report.  Nevertheless, the trial court considered the truth of defendant's out-of-court statement.

Defendant failed to preserve his appellate claim because he did not object at trial on the grounds raised on appeal.  (Evid.Code, § 353, subd. (a).)  We will, however, consider the merits of defendant's claim because he also asserts that his counsel was ineffective in failing to object.  But even if the trial court erred in considering inadmissible hearsay, and even if defense counsel's performance was deficient in failing to object, defendant's claim fails because he has not established prejudice.

The application of ordinary rules of evidence does not implicate the federal Constitution, and thus we review error in admitting hearsay under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).  (*People v. Harris* (2005) 37 Cal.4th 310, 336.)  We examine the entire cause to determine whether it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error.  (*Watson, supra*, 46 Cal.2d at p. 836; see also Evid.Code, § 353, subd. (b) [a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless the error resulted in a miscarriage of justice].)  The second prong of the test for deciding an ineffective assistance of counsel claim requires a similar analysis.  (*People v. Ledesma, supra*, 43 Cal.3d at pp. 217–218; *Strickland, supra*, 466 U.S. at pp. 693–694 [80 L.Ed.2d at pp. 697–698].)

26

The trial court's finding that defendant could assist his trial counsel in a rational manner was supported by substantial evidence even in the absence of the challenged hearsay evidence.  Based on Dr. Hart's testimony, the trial court's observation of defendant's conduct during the guilt phase and competency trials, and the fact that Dr. Chellsen and Dr. Weiss could not rule out the possibility that defendant was feigning a mental disorder, we are convinced that any error with regard to admitting defendant's statement would not affect the result of the competency trial.

C

Defendant argues the cumulative effect of the erroneous admission of privileged information and defendant's out-of-court statement, and the inadequate performance by his trial counsel, denied him due process of law.  We disagree.  Even where we have assumed errors, we have concluded that the assumed errors were harmless.  For the reasons we have stated, it is not reasonably probable that the trial court would have reached a different competency determination in the absence of the assumed errors.  (*People v. Holt* (1984) 37 Cal.3d 436, 458–459 [applying *Watson* standard of review]; *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349.)  We also reject defendant's claim that cumulative errors require reversal of the sanity verdict as that claim is premised on the same arguments raised with regard to the competency trial.

*Payne*, 2014 WL 2090542, at *7-11.

## 2. <u>Analysis</u>

Petitioner argues in the petition before this court, as he did in state court, that his trial counsel rendered ineffective assistance in failing to prevent the admission into evidence at the competency trial of the second evaluations conducted by Drs. Antoine and Cavanaugh, on the grounds that this evidence was subject to the attorney-client privilege and the attorney work-product doctrine.  Resp't's Lodg. Doc. 7 at 13.  The California Court of Appeal determined, after an analysis of state law and the state court record, that information gained from the evaluations conducted by Drs. Antoine and Cavanaugh was not protected by the attorney-client privilege.  "State courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Petitioner has failed to demonstrate that the decision of the California Court of Appeal is a subterfuge to evade consideration of a federal issue.

/////

27

1    Even assuming *arguendo* that material subject to the attorney-client privilege was

2    introduced at petitioner's trial, he has failed to demonstrate that he suffered prejudice.  In

3    *Cluchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985), the Ninth Circuit explained:

> Standing alone, the attorney-client privilege is merely a rule of
> evidence; it has not yet been held a constitutional right.  *See Maness
> v. Meyers*, 419 U.S. 449, 466 n. 15, 95 S.Ct. 584, 595 n. 15, 42
> L.Ed.2d 574 (1975); *Beckler v. Superior Court*, 568 F.2d 661, 662
> (9th Cir.1978).   In some situations, however, government
> interference with the confidential relationship between a defendant
> and his counsel may implicate Sixth Amendment rights.  *See, e.g.,
> Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30
> (1977).  Such an intrusion violates the Sixth Amendment only when
> it substantially prejudices the defendant.   *United States v. Irwin*,
> 612 F.2d 1182, 1186-87 (9th Cir.1980); *see United States v. Glover*,
> 596 F.2d 857, 863-64 (9th Cir.), *cert. denied*, 444 U.S. 860, 100
> S.Ct. 124, 62 L.Ed.2d 81 (1979).

11   As explained by the state appellate court, there was significant evidence before the trial court,

12   apart from the reports filed by Drs. Antoine and Cavanaugh, that petitioner was competent to

13   stand trial.  In light of that significant evidence, petitioner cannot show that he was prejudiced by

14   his trial counsel's failure to object to the admission of the doctors' reports.  This court agrees with

15   the California Court of Appeal that "an objection by defense counsel to the admission of

16   defendant's communications with Dr. Antoine and Dr. Cavanaugh and the reports by Dr. Antoine

17   and Dr. Cavanaugh would not have resulted in a more favorable result for defendant at the

18   competency trial."  *Payne*, 2014 WL 2090542, at *11.

19   For the same reason, petitioner has also failed to demonstrate prejudice with regard to his

20   claim that his trial counsel rendered ineffective assistance in failing to object to the admission of

21   his hearsay statements to another inmate that he needed to present an insanity defense.  Given the

22   substantial evidence before the trial court that petitioner was competent to stand trial, there is no

23   reasonable probability the result of the competency proceedings would have been different had

24   trial counsel objected to the admission of these remarks.  Certainly trial counsel's failure to object

25   to petitioner's hearsay statements does not "undermine confidence in the outcome" of the

26   competency proceedings.  *Strickland*, 466 U.S. at 694.

27   Petitioner also claims that the cumulative effect of his trial counsel's errors violated his

28   right to due process.  Resp't's Lodg. Doc. 7 at 20-21.  The cumulative error doctrine in habeas

1    recognizes that, "even if no single error were prejudicial, where there are several substantial

2    errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian*

3    *v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868

4    (9th Cir. 1996)).  However, where there is no single constitutional error existing, nothing can

5    accumulate to the level of a constitutional violation.  *See Fairbank v. Ayers*, 650 F.3d 1243, 1257

6    (9th Cir. 2011), *cert. denied*, ⸺ U.S. ⸺, 132 S.Ct. 1757 (2012) ("[B]ecause we hold that none

7    of Fairbank's claims rise to the level of constitutional error, 'there is nothing to accumulate to a

8    level of a constitutional violation.'") (citation omitted); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th

9    Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no

10   cumulative prejudice is possible.").  "The fundamental question in determining whether the

11   combined effect of trial errors violated a defendant's due process rights is whether the errors

12   rendered the criminal defense 'far less persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294

13   (1973), and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

14   *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Brecht*, 507 U.S. at 637).

15       This court has addressed petitioner's claims of ineffective assistance of counsel and has

16   concluded that no error of constitutional magnitude occurred.  There is no evidence that an

17   accumulation of errors rendered petitioner's competency proceedings fundamentally unfair.

18   Accordingly, petitioner is not entitled to relief on his claim that cumulative error violated his right

19   to due process.

20       **D. Denial of Motions for Substitute Counsel**

21       In his next ground for federal habeas relief, petitioner claims that the trial court's denial of

22   his four requests for substitute counsel violated his Sixth Amendment right to counsel.  ECF No.

23   1 at 10, 83-87.  In the petition before this court, petitioner's complaints about his trial counsel

24   center around counsel's failure to locate and call his neighbor as a trial witness to testify that he

25   knew petitioner was smoking cocaine for seven days prior to the shooting because he was able to

26   smell it from his apartment.  *Id.* at 84.  Petitioner argues this testimony from the neighbor would

27   have countered the prosecutor's argument that petitioner smoked cocaine only on the day of the

28   shooting, and would have bolstered his own argument that his mental impairment from ingesting

1   cocaine negated the intent to kill, deliberation and premeditation, and/or malice aforethought.  *Id.*

2   at 84-85.  Petitioner argues that trial counsel's delay in attempting to locate his neighbor and

3   secure him as a trial witness "resulted in the loss of a potential key witness and in performance

4   that fell below an objective standard of reasonableness."  *Id.* at 84.[13]

5   **1. State Court Decision**

6   The California Court of Appeal rejected these arguments, reasoning as follows:

7   Defendant contends the trial court prejudicially erred in denying his
    motions to discharge his appointed trial counsel.

8

9   Defendant sought to relieve his appointed trial attorney, Lance
    Jacot, on four occasions by making what is commonly referred to as
10  a *Marsden* motion.  (*People v. Marsden* (1970) 2 Cal.3d 118
    (*Marsden*).)  The first *Marsden* motion was brought before the
11  preliminary hearing; defendant had not yet been held to answer for
    the charges.  Defendant was dissatisfied that Jacot had not
12  interviewed two witnesses.  Defendant did not have the names of
    the witnesses but indicated one witness was a Panda Express
13  cashier with whom defendant spoke one or two days before the
    shooting, and the second witness was a neighbor.  Defendant said
14  Jacot promised to deliver witness statements to defendant but had
    not done so.  Jacot said he anticipated calling witnesses at the
15  preliminary hearing.  The trial court denied defendant's *Marsden*
    motion, noting that defendant's case was only four- or five- months
16  old, the preliminary hearing had not yet been held, and defendant's
    case was serious and required a lot of attention.  The trial court
17  found Jacot competent and prepared, although a little optimistic
    about when he could get his witness statements completed.

18  Defendant made another *Marsden* motion less than three weeks
    later, prior to his arraignment.  Defendant sought to replace Jacot
19  because, among other things, Jacot still had not given him the
    witness statements.  Defendant said he wanted to line up his
20  witnesses.  Jacot responded that he submitted an investigation
    request with a return date of about three and a half weeks hence.
21  Jacot pointed out that defendant was just being arraigned and a trial
    date had not been set.[14]  Jacot described other issues in the case that
22  he explored with defendant, along with communications with
    defendant's sister who provided Jacot evidence she thought was
23

24  ────────────────

25  [13]   During his *Marsden* motions in the trial court, petitioner raised additional complaints
    about his trial counsel.

26
    [14]   Defendant claims Jacot sought to avoid the problem with his delayed investigation by
27  suggesting that the issue had been resolved at a prior *Marsden* hearing.  We disagree.  Jacot said
    the fact that no jury trial date had been set was dealt with previously.  That fact was indeed
28  discussed at the prior *Marsden* hearing.

important to the case.  The trial court denied the *Marsden* motion, finding insufficient cause to relieve Jacot.

The trial court held another hearing on a *Marsden* motion about three months after the jury returned guilty verdicts.  The motion was heard before the judge who presided over the guilt phase of trial.  Defendant said his counsel "never got to that witness [referring to defendant's neighbor] at all in the trial.  The DA, he was saying, I didn't get cocaine, and that I was doing it the day of the trial [sic ].  That was a witness we never got to.  He assured me, but we never did, we never got testimony on him."  Defendant suggested the neighbor could testify that he smelled cocaine coming from defendant's apartment, thereby supporting defendant's claim about smoking cocaine for seven days in his apartment.  Jacot responded that his investigators tried but could not locate the neighbor.  The trial court denied the *Marsden* motion, finding no substantial showing that Jacot provided inadequate representation.

The trial court heard a fourth *Marsden* motion about 14 months later.  Defendant complained, among other things, that Jacot could not locate the neighbor who smelled cocaine coming from defendant's apartment even though counsel assured defendant it would not be a problem to locate that witness.  Jacot said the issue of the witness was discussed at prior *Marsden* hearings.  He said an investigator had the neighbor's apartment number but no name; however, the investigator eventually obtained the neighbor's name.  The trial court determined that Jacot attempted to find the neighbor but was unsuccessful.  It concluded that defendant's complaint regarding the neighbor did not create a substantial showing of inadequate representation and denied defendant's *Marsden* motion.

On appeal, defendant again contends his appointed trial counsel was inadequate because he did not promptly interview the neighbor and the neighbor subsequently could not be located.  On this basis, he claims the trial court abused its discretion in denying his *Marsden* motions.

"Established principles govern our assessment of whether the [trial] court abused its discretion in denying defendant's *Marsden* motion[s].  'Once a defendant is afforded an opportunity to state his or her reasons for seeking to discharge an appointed attorney, the decision whether or not to grant a motion for substitution of counsel lies within the discretion of the trial judge.  The court does not abuse its discretion in denying a *Marsden* motion "'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.'" [Citations.]   Substantial impairment of the right to counsel can occur when the appointed counsel is providing inadequate representation or when "the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]."'"  (*People v. Myles* (2012) 53 Cal.4th 1181, 1207.)

A defendant claiming inadequate representation by counsel must prove that, considering all of the circumstances at the time of

counsel's conduct, counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms. (*Strickland, supra*, 466 U.S. at pp. 687–690 [80 L.Ed.2d at pp. 693–695].)  The defendant must overcome a strong presumption of reasonable professional assistance because we must be highly deferential to counsel's judgment. (*Id.* at pp. 689–691 [80 L.Ed.2d at pp. 694–695].)  Judicial scrutiny of counsel's performance gives wide latitude to counsel's tactical decisions. (*Id.* at pp. 688–689 [80 L.Ed.2d at p. 694].)

Defendant's challenge to the denial of his *Marsden* motions fails because he cannot overcome the presumption of adequate representation.  A complaint about counsel's decision to delay interviewing potential witnesses is essentially a tactical disagreement which is generally insufficient to compel discharge of counsel. (*People v. Cole* (2004) 33 Cal.4th 1158, 1192.)  Contrary to defendant's claim, defense counsel investigated the witnesses defendant identified.  Jacot succeeded in locating one of the witnesses.  An investigator working for the defense canvassed the area, but could not find the second witness.  Although it is possible defense counsel's investigator could have located the second witness had counsel decided to interview potential witnesses sooner, on the facts before the trial court we are unwilling to conclude that counsel's timing for witness interviews was objectively unreasonable.

In any event, counsel's conduct did not result in the withdrawal of a crucial defense.  (*People v. Pope* (1979) 23 Cal.3d 412, 425 [to prove a claim of inadequate trial assistance, defendant "must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense"], *overruled on other grounds* in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, *overruled on other grounds* in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn.1; *People v. Diggs* (1986) 177 Cal.App.3d 958, 968–969 [same].)  Defendant claims his neighbor would have testified about defendant's cocaine use the week before the shooting.  But that fact and a defense based on defendant's cocaine use was presented during the guilt and sanity phases of trial.  During the guilt phase, Jacot presented a defense of cocaine-induced psychosis, arguing that prolonged cocaine use rendered defendant incapable of forming the requisite mental states for committing a murder and murder in the first degree.  Jacot argued in the sanity phase that defendant was psychotic on the day of the shooting and the psychosis was caused by long-term drug use.

Jacot called witnesses in support of the cocaine-related defense.  Defendant testified, in both the guilt and sanity phases, about his heavy cocaine use during the week before the shooting.  A psychologist who examined defendant for the sanity phase also testified about defendant's statements to her that he began to smoke cocaine after Jamie left, and that he was not thinking clearly on the day of the shooting because of his cocaine use.  Jamie's mother and sister said, during the guilt phase, that defendant was panicked, frightened, paranoid, and very emotional the week after Jamie left with the children, and defendant did not act like himself.  Jamie's

mother opined that defendant was under the influence of drugs around the time Jamie was killed, and the mother testified again in the sanity phase about defendant's drug use the week before Jamie's death.  Additionally, a drug recognition expert testified at both trials that long term cocaine use can cause psychosis.  A forensic toxicologist also testified about cocaine-induced psychosis during the guilt phase.

Jacot's decision to postpone interviewing defendant's neighbor did not result in the withdrawal of a crucial defense, and defendant fails to demonstrate prejudice resulting from Jacot's conduct.  (*People v. Fosselman* (1983) 33 Cal.3d 572, 584 ["in cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amounting to withdrawal of a defense, a defendant may prove ineffectiveness if he establishes that . . . counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings"].)

*People v. Shaw* (1984) 35 Cal.3d 535 (*Shaw*), *People v. Jones* (2010) 186 Cal.App.4th 216 (*Jones*), and *People v. Rodriguez* (1977) 73 Cal.App.3d 1023, 1029 (*Rodriguez*) do not help defendant.  Counsel in *Shaw* failed to investigate a potentially meritorious defense and did not present any defense in the case.  (*Shaw, supra*, 35 Cal.3d at pp. 538, 541–542.)  Counsel in *Jones* acknowledged it was possible he failed to contact two percipient witnesses in a timely manner, to the potential detriment of defendant's case; moreover, counsel did not request the help of an investigator to investigate the defendant's version of the events, and counsel did not present any witnesses to support the defendant's claim.  (*Jones, supra*, 186 Cal.App.4th at pp. 221, 224–225.)  Counsel in *Rodriguez* failed to determine potential witnesses whose testimony may have bolstered defendant's sole defense and discredited the prosecution's eyewitness identification of the defendant as the perpetrator of the charged robberies.  (*Rodriguez, supra*, 73 Cal.App.3d at p. 1031.)  No such facts are present here.

According to defendant, Jacot mistakenly represented that, at a prior *Marsden* hearing, he submitted a report regarding the search for defendant's neighbor.  The record does not indicate the presentation of such a report at a *Marsden* hearing.  But defendant does not show how any such misstatement regarding a report evidences incompetent representation in the manner asserted on appeal.

We conclude the trial court acted well within its discretion in finding that defendant failed to establish a substantial impairment of his right to effective assistance of counsel.  The trial court did not err in denying defendant's *Marsden* motions.

*Payne*, 2014 WL 2090542, at *11-14.

/////

/////

## 2. Applicable Legal Principles

Pursuant to the decision in *People v. Marsden*, 2 Cal. 3rd 118 (1970), when a criminal defendant in California asserting inadequate representation seeks to discharge appointed counsel and substitute another attorney, the trial court must permit him to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. The denial of a *Marsden* motion to substitute counsel can implicate a criminal defendant's Sixth Amendment right to counsel and is properly considered in federal habeas corpus. *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds* by *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc). On federal habeas review, the relevant inquiry is whether the state trial court's disposition of the *Marsden* motion violated petitioner's right to counsel because the asserted conflict "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1027-28. The Ninth Circuit has also explained:

> [T]he basic question is simply whether the conflict between Schell and his attorney prevented effective assistance of counsel . . . . It may be the case, for example, that because the conflict . . . arose over decisions that are committed to the judgment of the attorney and not the client, in fact he actually received what the Sixth Amendment required in the case of an indigent defendant ....

*Id.* at 1026. The Sixth Amendment guarantees effective assistance of counsel, but not a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The United States Supreme Court has not specifically addressed the level of inquiry required when a *Marsden* motion or other similar motion is made by a criminal defendant. When assessing a trial court's ruling on a *Marsden* motion in the context of a federal habeas corpus proceeding, the Ninth Circuit has held that the Sixth Amendment requires only "an appropriate inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the case goes forward." *Schell*, 218 F.3d at 1025. *See also Plumlee v. Masto*, 512 F.3d 1204, 1211

/////

34

1   (9th Cir. 2008) ("Under our precedents, *see, e.g., Schell*, 218 F.3d at 1025-26, Judge Lane had a

2   duty to inquire into the problems with counsel when they were first raised, and he did so").

3              **3. <u>Analysis</u>**

4         Here, the trial court held four *Marsden* hearings, inquired into counsel's representation

5   and petitioner's complaints, and satisfied itself that the representation was adequate.  The trial

6   judge gave petitioner a full opportunity to explain his reasons for wanting to substitute another

7   attorney for his appointed trial counsel.  This procedure complied with the Sixth Amendment.

8   *See Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007) (inquiry was adequate when court

9   determined that the lines of communication were open and counsel was competent); *United States*

10  *v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (inquiry was adequate where defendant 'was given

11  the opportunity to express whatever concerns he had, and the court inquired as to [defense

12  attorney's] commitment to the case and his perspective on the degree of communication."); *cf.*

13  *Schell*, 218 F.3d at 1027 (remanding for an evidentiary hearing where the state court failed to

14  make any inquiry into alleged deterioration of attorney-client relationship and the substance of the

15  petitioner's claims).

16        This court has reviewed the transcripts of petitioner's *Marsden* hearings and does not find

17  that a conflict between petitioner and his trial counsel had become so great that it resulted in a

18  constructive denial of petitioner's Sixth Amendment right to counsel.  *Schell*, 218 F.3d at 1027-

19  28.  To the extent that petitioner's lack of trust flowed from his trial counsel's failure to call his

20  neighbor as a witness at trial, this does not establish a Sixth Amendment violation because the

21  conflict "arose over decisions that are committed to the judgment of the attorney and not the

22  client."  *Schell*, 218 F.3d at 1026.  *See also United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd

23  Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so

24  which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost

25  every trial.").  In any event, petitioner has not demonstrated that his neighbor would have agreed

26  to testify, or that he would have testified in the manner that petitioner suggests.  Petitioner has

27  therefore failed to show that his trial counsel was deficient in failing to locate a witness who

28  would have given helpful or exculpatory evidence at his trial.

1   Under the circumstances of this case, the trial court was not unreasonable in concluding

2   that petitioner's trial counsel was providing competent representation.  Accordingly, petitioner is

3   not entitled to relief on his *Marsden* claims.[15]

4   **IV. Conclusion**

5   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6   application for a writ of habeas corpus be denied.

7   These findings and recommendations are submitted to the United States District Judge

8   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9   after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within fourteen days after service of the objections.  Failure to file

---

[15]  It does not appear that petitioner is raising an independent claim that his trial counsel rendered ineffective assistance in failing to locate and call his neighbor as a trial witness.  Even if he is raising such a claim, it should be denied for lack of a showing of prejudice.  As the Ninth Circuit has observed in connection with a similar claim:

> Though counsel's performance likely proved deficient, Hurles has not established prejudice.  To do so, Hurles must show a reasonable probability that but for counsel's failure to track down the witness, the result of the guilt phase would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Federal post-conviction counsel sought and obtained funding for an investigator to locate this witness.  There is nothing in the record to suggest that she has been found, and we can only speculate as to the nature of her testimony and whether it would have helped or undermined Hurles's insanity defense.  Thus, Hurles's "claim of prejudice amounts to mere speculation," *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir.1981).

*Hurles v. Ryan*, 752 F.3d 768, 782 (9th Cir.) *cert. denied*, 135 S. Ct. 710, 190 L. Ed. 2d 461 (2014).  *See also United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to satisfy the prejudice prong of an ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).  As noted above, petitioner has failed to demonstrate that his neighbor would have agreed to testify or that his testimony would have changed the outcome of his trial.  Under these circumstances, petitioner is not entitled to habeas relief on any claim of ineffective assistance of trial counsel in failing to call his neighbor as a trial witness.

1   objections within the specified time may waive the right to appeal the District Court's order.

2   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

3   1991).  In his objections petitioner may address whether a certificate of appealability should issue

4   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

5   2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

6   final order adverse to the applicant).

7   DATED:  December 15, 2016.

8                                                           EDMUND F. BRENNAN
                                                            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28